United States District Court
District of New Jersey

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL COMPLAINT** |
| v. | | |
| **KEITH SMITH** | : | **Magistrate No. 09-6030** |

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about March 2008 through in or about October 2008, in Union County, and elsewhere within the District of New Jersey, defendant Keith Smith did:

> knowingly and willfully conspire and agree with one or more persons to effect transactions with the intent to defraud, with one or more access devices issued to another person or persons, to receive payment or any other thing of value during any one-year period the aggregate value of which is equal to or greater than $1,000, contrary to Title 18, United States Code, Section 1029(a)(5);

In violation of Title 18, United States Code, Section 1029(b)(2).

I further state that I am a Special Agent for the United States Secret Service ("U.S.S.S.") and that this complaint is based on the following facts:

SEE ATTACHMENT A.

Hazel Cerra
Special Agent, United States Secret Service

Sworn to before me and subscribed in my presence,

February 10, 2009
Date

Newark, NJ
City and State

HON. MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

I, Hazel Cerra, am a Special Agent, with the United States Secret Service ("U.S.S.S."). Based upon my investigation and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. This investigation, including undercover surveillance, the review of certain documents, and witness interviews has revealed that from in or about March 2008 through in or about October 2008, Keith Smith ("Smith") conspired and agreed with Individual 1, Individual 2, Individual 3, and others, to commit credit card fraud by, knowingly and with the intent to defraud, effecting transactions using credit cards issued by Washington Mutual Bank to individuals other than Smith to purchase, among other things, diesel gasoline, which Smith and his co-conspirators resold to commercial truck drivers at a substantial discount. For example:

    a. On or about July 3, 2008, Individual 1 used a Mastercard issued by Washington Mutual Bank, in the name of "C.P.", with account number ending in: 5019, to purchase diesel gasoline from a service station in Union, New Jersey. On the same date, Individual 1, with help from Individual 2 and Individual 3, resold the diesel gasoline he purchased with the Mastercard issued to C.P. to several commercial truck operators with whom Individual 1 had pre-arranged such transactions.

    b. On or about April 17, 2008, Individual 2 used a Mastercard issued by Washington Mutual Bank, in the name of "J.R.", with account number ending in: 9011, to purchase diesel gasoline from a service station in Union, New Jersey. On the same date, Individual 2, with help from Individual 1 and Individual 3, resold the diesel gasoline he purchased with the Mastercard issued to J.R. to several commercial truck operators with whom Individual 2 had pre-arranged such transactions.

    c. On or about July 22, 2008, Individual 3 used a Mastercard issued by Washington Mutual Bank, in the name of "A.F.", with account number ending in: 0010, to purchase diesel gasoline from a service station in Union, New Jersey. On the same date, Individual 3, with help from Individual 1 and Individual 2, resold the diesel gasoline he purchased with the Mastercard issued to A.F. to several commercial truck operators with whom Individual 3 had pre-arranged such transactions.

2. Over the course of the period between in or about March 2008 and in or about October 2008, the credit card fraud scheme resulted in losses to Washington Mutual Bank and certain gas stations of more than approximately $400,000.

3. On or about December 16, 2008, U.S.S.S. investigators conducted an interview of Individual 1, who stated in substance and in part that:

a. In or about March 2008, Smith recruited Individual 1 to participate in a credit card fraud scheme that Smith planned, in which the co-conspirators would effect transactions using credit cards issued by Washington Mutual Bank to individuals other than Smith and Individual 1 to purchase, among other things, diesel gasoline, which Smith and his co-conspirators resold to commercial truck drivers at a substantial discount.

b. Smith recruited others into the credit card fraud scheme, including, Individual 2 and Individual 3.

c. At Smith's encouragement, Individual 1 recruited others into the credit card fraud scheme.

d. Smith, Individual 1, Individual 2, and Individual 3 (the "Main Co-Conspirators") each recruited participants to visit various Washington Mutual Bank branches in New Jersey and open accounts linked to debit/credit cards (the "Account Holders"). The Account Holders opened the accounts using nominal amounts typically not greater than $10.

e. In exchange for cash payments, the Account Holders agreed with one or more of the Main Co-Conspirators to accompany one or more of the Main Co-Conspirators to certain gas stations in New Jersey and authorize the use of the credit/debit cards linked to their accounts at Washington Mutual Bank to purchase diesel gasoline over a three-day period, during which the credit/debit cards remained active even though the associated accounts were overdrawn.

f. One or more of the Main Co-Conspirators also recruited certain commercial truck operators to accompany one or more of the Main Co-Conspirators on various dates between in or about March 2008 and in or about October 2008 to re-purchase the diesel gasoline paid for with the Account Holders' credit/debit cards for approximately half the original price per gallon.

4. On or about February 3, 2009, U.S.S.S. investigators conducted an interview of Individual 2, who stated in substance and in part that:

a. Smith recruited Individual 2 to participate in a credit card fraud scheme that Smith planned, in which the co-conspirators would effect transactions using credit cards issued by Washington Mutual Bank to individuals other than Smith and Individual 2 to purchase, among other things, diesel gasoline, which Smith and his co-conspirators resold to commercial truck drivers at a substantial discount.

b. Smith recruited others into the credit card fraud scheme, including Individual 1 and Individual 3.

c. At Smith's encouragement, Individual 2 recruited others into the credit card fraud scheme.

d.  The Main Co-Conspirators each recruited the Account Holders to visit various Washington Mutual Bank branches in New Jersey and open accounts linked to debit/credit cards. The Account Holders opened the accounts using nominal amounts typically not greater than $10.

e.  In exchange for cash payments, the Account Holders agreed with one or more of the Main Co-Conspirators to accompany one or more of the Main Co-Conspirators to certain gas stations in New Jersey and authorize the use of the credit/debit cards linked to their accounts at Washington Mutual Bank to purchase diesel gasoline over a three-day period, during which the credit/debit cards remained active even though the associated accounts were overdrawn.

f.  One or more of the Main Co-Conspirators also recruited certain commercial truck operators to accompany one or more of the Main Co-Conspirators on various dates between in or about March 2008 and in or about October 2008 to re-purchase the diesel gasoline paid for with the Account Holders' credit/debit cards for approximately half the original price per gallon.